JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GOLDEN STATE FOODS CORP., a ) CV 13-8150 RSWL (VBKx)
California Corporation )
                                )
        Plaintiff,              )
                                )    **ORDER RE: DEFENDANT'S**
                                )    **MOTION FOR SUMMARY**
        v.                      )    **JUDGMENT, OR IN THE**
                                )    **ALTERNATIVE, SUMMARY**
                                )    **ADJUDICATION [15]**
COLUMBIA/OKURA LLC, a           )
Washington Limited              )
Liability Corporation; and      )
DOES 1 through 100,             )
inclusive,                      )
                                )
        Defendants.             )
                                )
                                )
_____)

    Currently before the Court is Defendant

Columbia/Okura LLC's ("Defendant") Motion for Summary

Judgment, or in the Alternative, Summary Adjudication

filed April 21, 2014 [15]. Plaintiff Golden State

Foods Corp. ("Plaintiff") filed an Opposition on April

30, 2014 [17], and Defendant filed a Reply on May 6,

2014 [19]. This matter was taken under submission on

May 14, 2014 [20]. Having reviewed all papers and

arguments submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **GRANTS** Defendant's Motion and **DISMISSES** this Action [15].

### I.BACKGROUND

Plaintiff is a California corporation doing business in Los Angeles County.  Compl. ¶ 1.  Plaintiff operates a manufacturing facility in the City of Industry, California (the "Manufacturing Facility").  Id. at ¶ 5.  Defendant is a limited liability company organized under the laws of the State of Washington doing business in Los Angeles County.  Id. at ¶ 2.

On June 28, 2007, Defendant made a written proposal to install two Robotic Palletizers[1] at Plaintiff's Manufacturing Facility.  Def.'s Statement of Uncontroverted Facts and Conclusions of Law ("SUF") # 1; Pl.'s Separate Statement of Uncontroverted Material Facts and Conclusions of Law ("SSUMF") # 1.  That written quotation was numbered 3633Q2a (the "Quotation").  Id.  Plaintiff's plant engineer, Jorge Hasbun, signed the signature page of the approval package for the Quotation, which was communicated to Defendant.  Id. at # 2.

On September 21, 2007, a representative of

---

[1] "A palletizer is a machine which provides automatic means for stacking cases of goods or products onto a pallet."  Hutton Decl. ¶ 2.  The Robotic Palletizer at issue in this case appears to be a Columbia/Okura LLC Series A1600 Robotic Palletizer.  See Dorny Decl. ¶ 2; Page Decl. ¶ 2; Hutton Decl. Ex. A.

1  Defendant signed a "GSF Preferred Vendor Master Supply
2  and Services Agreement" (the "GSF Agreement") and sent
3  it to Plaintiff.  Id. at # 3.
4      On October 1, 2007, Plaintiff prepared an "AIA
5  Standard Form of Agreement Between Owner and
6  Contractor" (the "AIA Agreement").  Id. at # 4.  The
7  AIA Agreement was executed on behalf of Plaintiff by
8  Ricahrd D. Moretti and on behalf of Defendant by Brian
9  Hutton on October 13, 2007.  Id.
10     The Complaint alleges (without citation to the GSF
11 and AIA Agreements) that pursuant to these agreements,
12 Defendant agreed: (1) to initiate, maintain, and
13 supervise all safety precautions and programs in
14 connection with the performance of the agreements; (2)
15 to comply with all laws and regulations in connection
16 to its work under the agreements; (3) that the work
17 would be free from defects not inherent in the quality
18 required or permitted; (4) to take precautions for the
19 safety of and provide reasonable protections to prevent
20 damage, injury, or loss; (5) to erect and maintain
21 reasonable safeguards for safety and protection; (6)
22 that in an emergency affecting safety of persons or
23 property that Defendant would act to prevent threatened
24 damage, injury, or loss; and (7) to indemnify and hold
25 harmless Plaintiff from and against claims, damages,
26 liabilities, losses, and expenses arising out of or
27 resulting from performance of Defendant's work pursuant
28 to the agreements, or arising from Defendant's

1  operations, acts, omissions, products, or services.
2  Compl. at ¶ 8.

3      Plaintiff alleges that Defendant breached the
4  agreements by failing to maintain, repair, and service
5  two Robotic Palletizers[2] it installed for Plaintiff
6  pursuant to the agreements. Id. at ¶ 10.  Plaintiff
7  further alleges that Defendant failed to erect and
8  maintain safety precautions to prevent injury to
9  Plaintiff's employees.  Id.  Plaintiff alleges that
10 Defendant breached the agreements during installation
11 of the Robotic Palletizers and during Defendant's
12 maintenance of the Robotic Palletizers on July 9 and
13 10, 2009.  Id. at ¶ 11.

14     Plaintiff alleges that as a result of Defendant's
15 breaches, Plaintiff's employee, Ms. Vital,[3] was killed
16 by one of the Robotic Palletizers on July 21, 2009.
17 Id. at ¶ 13.  On January 23, 2013, Plaintiff pleaded
18 guilty to a violation of California Labor Code §
19 6425(a) for the willful violation of Title 8 of the

20

21     [2] The palletizers Defendant installed included several
22 safety features.  Hutton Decl. ¶ 3.  First, workers were to
   follow lockout/tagout procedures to ensure that dangerous
23 machines were "properly shut off and not started up again prior
   to the completion of maintenance or servicing work."  Id.
24 Second, "[a] safety perimeter fence (called EZ WIRE® perimeter
   guarding) also encloses automated machinery (the 'robotic cell'),
25 and the gate can only be opened by using a trapped key safety
   interlock system that de-energizes the 3 phase motor power for
26 all equipment within the perimeter guarded cell."  Id.

27     [3] Plaintiff's employee is referred to as both "Ana Vital"
28 (Page Decl. ¶ 2; Dorny Decl. ¶ 2) and "Anna Marie Vital"
   (Hastings Decl. ¶ 2).

California Code of Regulations § 3314(h) – failure to conduct periodic inspections of energy control procedures. SUF # 6; SSUMF # 6; Keleti Decl. Ex. F at 32. Plaintiff did not submit any written claims to Defendant or participate in mediation or arbitration prior to filing the instant Action in Los Angeles Superior Court on July 9, 2013. SUF # 9; SSUMF # 9.

Plaintiff brought this Action against Defendant on July 9, 2013 in Los Angeles Superior Court, bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of express indemnity, and for implied/equitable indemnity [1]. Defendant removed this Action to this Court on November 4, 2013 [1] and filed an Answer on November 15, 2013 [8].

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.

1  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d

2  1327, 1329 (9th Cir. 1983).

3       Where the moving party does not have the burden of

4  proof at trial on a dispositive issue, the moving party

5  may meet its burden for summary judgment by showing an

6  "absence of evidence" to support the non-moving party's

7  case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

8       The non-moving party, on the other hand, is

9  required by Fed. R. Civ. P. 56(c) to go beyond the

10  pleadings and designate specific facts showing that

11  there is a genuine issue for trial.  <u>Id.</u> at 324.

12  Conclusory allegations unsupported by factual

13  allegations are insufficient to create a triable issue

14  of fact so as to preclude summary judgment.  <u>Hansen v.</u>

15  <u>United States</u>, 7 F.3d 137, 138 (9th Cir. 1993).  A non-

16  moving party who has the burden of proof at trial must

17  present enough evidence that a "fair-minded jury could

18  return a verdict for the [non-moving party] on the

19  evidence presented."  <u>Anderson</u>, 477 U.S. at 255.  Where

20  a motion for summary judgment is grounded on the

21  assertion that the non-moving party has no evidence,

22  the non-moving party may defeat the motion by "calling

23  the Court's attention to supporting evidence already in

24  the record that was overlooked or ignored by the moving

25  party."  <u>Celotex</u>, 477 U.S. at 332.

26       Conclusory, speculative testimony in affidavits and

27  moving papers is insufficient to raise genuine issues

28                                6

of fact and defeat summary judgment.  See Falls
Riverway Realty, Inc. v. Niagara Falls, 754 F.2d 49 (2d
Cir. 1985); Thornhill Pub. Co., Inc. v. GTE Corp., 594
F.2d 730, 738 (9th Cir. 1979).  The party who will have
the burden of proof must persuade the Court that it
will have sufficient admissible evidence to justify
going to trial.  Notmeyer v. Stryker Corp., 502 F.
Supp. 2d 1051, 1054 (N.D. Cal. 2007).

In ruling on a motion for summary judgment, the
Court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists.  Anderson, 477 U.S. at 255.

### III.  DISCUSSION

**A.  Do the Notice and Alternative Dispute Resolution Provisions of the AIA Agreement Bar Plaintiff's Indemnity Claims?**

> 1.  The GSF and AIA Agreements Constitute the Entirety of the Parties' Contract and Govern the Dispute at Issue in this Action

Defendant asserts - and Plaintiff agrees - that the
AIA Agreement and the GSF Agreement are the operative
contracts governing this Action.  See SUF ## 3-4; SSUMF
## 3-4; Mot. 7:1-22, 8:20-9:21; Opp'n 17:12-18:21.  The
AIA Agreement contains two integration clauses and
references and incorporates the GSF Agreement.  Hutton
Decl. Ex. D at 23, 25 & 45.  Given that the Parties do
not appear to dispute that the AIA and GSF Agreements

are the governing contracts and because "[t]he
existence of an integration clause is a key factor" in
determining whether the Parties "intended the contract
to be a final and complete expression of their
agreement," the Court finds that the AIA and GSF
Agreements constitute the entire contract governing the
Parties' relationship here.  Grey v. Am. Mgmt. Servs.,
204 Cal. App. 4th 803, 807 (2012) (citing Founding
Members of the Newport Beach Country Club v. Newport
Beach Country Club, Inc., 109 Cal. App. 4th 944, 953-54
(2003)).[4]  Moreover, the Court finds that to the extent

_____

[4] Defendant asserts that California law applies to the
instant Action because: (1) Plaintiff alleges (and therefore
admits) that California law applies, and (2) the AIA Agreement
specifies that "the Contract shall be governed by the law of the
place where the Project is located." Mot. 9:2-21; Hutton Decl.
Ex. D at 71.  Plaintiff argues that Defendant ignores
California's required choice of law analysis and has failed to
meet its burden on showing what the applicable law is. Opp'n 11:
19-28.

    As the "Project" is located in California, the AIA Agreement
specifies California law as governing law.  Hutton Decl. Ex. D at
23 & 71.

    In California, if the proponent of a choice of law clause
can show "that the chosen state has a substantial relationship to
the parties or their transaction or that a reasonable basis
otherwise exists for the choice of law, the parties' choice
generally will be enforced." Ostreicher v. Alienware Corp., 502
F. Supp. 2d 1061, 1065-66 (N.D. Cal. 2007) (quoting Wash. Mut.
Bank, FA v. Superior Court, 24 Cal. 4th 906, 917 (2001)).  At
that point, the choice of law clause will normally be enforced
unless the opposing party "can establish both that the chosen law
is contrary to the fundamental policy of California and that
California has a materially greater interest in the determination
of the particular issue." Id.

8

1    the AIA Agreement and the GSF Agreement conflict, the

2    AIA Agreement governs.   See Cal. Civ. Code § 1856(a).

3        The AIA Agreement specifies an effective term from

4    October 1, 2007 to December 31, 2009.   Hutton Decl. Ex.

5    D at 23.   As the events giving rise to this Action

6    allegedly took place on July 9, 10, and 21, 2009, the

7    AIA Agreement was in effect at all relevant times of

8    the events giving rise to this Action.   Compl. ¶¶ 11,

9    13.

10       2.   The Indemnification Provisions in the AIA

11            Agreement Cover Plaintiff's Contract Claims in

12            this Action

13       California defines "[i]ndemnity" as "a contract by

14   which one engages to save another from a legal

15   consequence of the conduct of one of the parties, or of

16   some other person."   Cal. Civ. Code § 2772.   "An

17   indemnity agreement is to be interpreted according to

18   the language of the contract as well as the intention

19   of the parties as indicated by the contract."   Myers

20   Bldg. Indus., Ltd. v. Interface Tech., Inc., 13 Cal.

21

22

23       Here, Defendant has clearly met its burden in showing that
     California has a substantial relationship to the transaction –
24   the contract was to be performed in California (see Hutton Decl.
     Ex. D at 23, 71) and Plaintiff's Complaint alleges that
25   California law applies (Compl. ¶¶ 6-7).   Plaintiff, in contrast,
     provides nothing more than a footnote contending that Defendant
26   has not met its burden in arguing what the applicable law is for
     each issue.   Opp'n 11:19-28.   As such, the Court finds that
27   California law applies to the issues raised in the instant
     Motion.

28                                   9

App. 4th 949, 968 (1993) (citing <u>Widson v. Int'l</u>
<u>Harvester Co., Inc.</u>, 156 Cal. App. 3d 45, 59 (1984));
<u>Crawford v. Weather Shield Mfg. Inc.</u>, 44 Cal. 4th 541,
552 (2008).  "The extent of the duty to indemnify is
determined from the contract."  <u>Myers Bldg. Indus.</u>, 13
Cal. App. 4th at 968 (citing <u>Herman Christensen & Sons,</u>
<u>Inc. v. Paris Plastering Co.</u>, 61 Cal. App. 3d 237, 245
(1976)).

   The "Indemnification," "Claims and Disputes,"
"Mediation," and "Arbitration" sections of the AIA
Agreement are relevant to the Court's analysis.[5]

   The Indemnification sections of the AIA Agreement
provide that Defendant will hold harmless and indemnify
Plaintiff for certain claims or losses attributable to
Defendant's negligent performance of the contracted
work.[6]  Hutton Decl. Ex. D at 52.  Indemnification is

_____

   [5] Several of these sections refer to an "Architect" to whom
written notice must be provided or claims must first be
submitted.  <u>See</u> Hutton Decl. Ex. D at 54-57.  However, the
Parties have agreed that most of the AIA Agreement's references
to "Architect" are not applicable.  Hutton Decl. Ex. D at 23.

   [6] Specifically, the indemnification provision reads:

   § 3.18.1 To the fullest extent permitted by law and to
   the extent claims, damages, losses or expenses are not
   covered by Project Management Protective Liability
   insurance purchased by the Contractor in accordance with
   Section 11.3, the Contractor shall indemnify and hold
   harmless the Owner, Architect, Architect's consultants,
   and agents and employees of any of them from and against
   claims, damages, losses and expenses, including but not
   limited to attorneys' fees, arising out of or resulting
   from performance of the Work, provided that such claim,

10

limited to only the extent that Defendant's negligent acts or omissions caused the claim or loss.  Id.  Plaintiff bases its contractual claims on its rights arising from these indemnity provisions.  Compl. ¶¶ 9-24.

The Claims and Disputes sections of the AIA Agreement create a procedure for initiating and resolving disputes between the Parties arising out of the Agreement.

The AIA Agreement broadly defines "Claims" to include not just disputes regarding interpretation of the contract's terms, but also "other disputes and matters in question between [Plaintiff] and [Defendant] arising out of or relating to the Contract."  Hutton Decl. Ex. D at 54.

Plaintiff alleges that this dispute arises out of Defendant's performance of the GSF and AIA Agreements.  See Compl. ¶¶ 10-11, 13-14, 17, 19-20, 22-24.

---

damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.

Hutton Decl. Ex. D. at 52.

Plaintiff alleges that Defendant failed to perform the work agreed to under the Agreements - to properly maintain, service, and repair the Robotic Palletizers. Id.  These allegations certainly involve a dispute "arising out of or relating to the Contract."  Hutton Decl. Ex. D at 54.

Both Plaintiff's breach of contract and breach of express indemnity claims are clearly founded and based upon the AIA Agreement.  Compl. ¶¶ 9-13, 21-24. Plaintiff's breach of contract claim, for example, alleges that Defendant breached the GSF and AIA Agreements by failing to comply with their terms.  Id. at ¶¶ 9-13.  Plaintiff's breach of express indemnity claim alleges that the GSF and AIA Agreements require Defendant to indemnify Plaintiff for any liabilities arising out of Defendant's performance of the Agreements.  Id. at ¶ 22.  Because Plaintiff alleges that the liabilities it has suffered stem from Defendant's performance under the Agreements, Plaintiff may be entitled to such indemnity under the Agreements. Id. at ¶¶ 23-24.  Consequently, because both claims allege that the dispute arises from Defendant's performance of the AIA Agreement, both claims relate to or arise out of the AIA Agreement.

    3.    <u>The AIA Agreement Makes Mediation a Condition Precedent to Arbitration and Legal and Equitable Proceedings</u>

1    The AIA Agreement contains a written notice
2 requirement for the presentation of claims.  In
3 particular, the AIA Agreement specifies that claims "be
4 initiated by written notice."  Id.  Claims "must be
5 initiated within 21 days after occurrence of the event
6 giving rise to such Claim or within 21 days after the
7 claimant first recognizes the condition giving rise to
8 the Claim, whichever is later."  Id.  The AIA Agreement
9 makes clear that "[i]f either party to the Contract
10 suffers injury or damage to person or property because
11 of an act or omission of the other party, . . . written
12 notice of such injury or damage . . . shall be given to
13 the other party within a reasonable time not exceeding
14 21 days after discovery."  Id. at 55.
15    The Mediation and Arbitration provisions of the AIA
16 Agreement similarly provide procedural requirements to
17 the presentation of claims.  The Mediation sections
18 provide that "[a]ny Claim arising out of or related to
19 the Contract . . . shall . . . be subject to mediation
20 as a condition precedent to arbitration or the
21 institution of legal or equitable proceedings by either
22 party."  Id. at 56.  The Arbitration sections similarly
23 state that "[a]ny Claim arising out of or related to
24 the Contract . . . shall . . . be subject to
25 arbitration."[7]  Id.
26 _____
27    [7] Both the Mediation and Arbitration provisions contain an
exception for "Claims relating to aesthetic effect," for
28                                 13

Defendant argues that because Plaintiff never
presented written notice of its claims to Defendant,
Plaintiff has not satisfied a condition precedent for
pursuing indemnity claims under the contract.  Mot.
10:18-28; Reply 3:5-4:2.  Plaintiff argues that the
notice provisions are not in play here because the law
"abhors forfeiture" and giving effect to these
provisions would amount to "form over substance"
because Defendant received constructive notice of
Plaintiff's indemnity claims within 21 days of the
accident.  Opp'n 17:12-18:21.

"In California, a condition precedent is 'one which
is to be performed before some right dependent thereon
accrues, or some act dependent thereon is performed.'"
NGV Gaming Ltd. v. Upstream Point Molate, LLC, 355 F.
Supp. 2d 1061, 1064 (N.D. Cal. 2005) (quoting Cal. Civ.
Code § 1436).  A condition precedent "is either an act
of a party that must be performed or an uncertain event
that must happen before the contractual right accrues
or the contractual duty arises." Id. (quoting Platt
Pac., Inc. v. Andelson, 6 Cal. 4th 307, 313 (1993));
Sosin v. Richardson, 210 Cal. App. 2d 258, 261 (1963);
1 Witkin, Summary of California Law, Contracts, § 721
(10th ed. 2005).  "Conditions precedent are disfavored

consequential damages, and for claims waived by the making of a
final payment.  Hutton Decl. Ex. D at 55-56, 65.  None of these
provisions apply to the instant dispute.

14

1   and will not be read into a contract unless required by

2   plain, unambiguous language." <u>Effects Assocs., Inc. v.</u>

3   <u>Cohen</u>, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (citing <u>In</u>

4   <u>re Bubble Up Dela., Inc.</u>, 684 F.2d 1259, 1264 (9th Cir.

5   1982)).

6        The Court finds that Defendant fails to show

7   "plain, unambiguous language" indicating that the 21-

8   day written notice requirement is a condition precedent

9   to the initiation of litigation.  In interpreting a

10  contract, courts "are guided by the standard of

11  reasonableness." <u>In re James E. O'Connell, Inc.</u>, 799

12  F.2d 1258, 1261 (9th Cir. 1986) (citing <u>Southland Corp.</u>

13  <u>v. Emeral Oil Co.</u>, 789 F.2d 1441, 1443 (9th Cir.

14  1986)); Cal. Civ. Code § 3542.  And in the absence of

15  "plain, unambiguous language" creating a condition

16  precedent, courts typically will not find such a

17  condition exists.  <u>Southland Corp.</u>, 789 F.2d at 1444;

18  <u>Vogt-Nem, Inc. v. M/V Tramper</u>, 263 F. Supp. 2d 1226,

19  1232 (N.D. Cal. 2002).  The Court finds that the 21 day

20  written notice requirement language in the AIA

21  Agreement does not create a condition precedent to

22  seeking judicial resolution of claims.  Although the

23  AIA Agreement makes clear that "Claims must be

24  initiated by written notice" and that they must be

25  initiated "within 21 days after occurrence of the event

26  giving rise to such Claim or within 21 days after the

27  claimant first recognizes the condition giving rise to

28                              15

the Claim," it does not specify the consequences of failing to timely present such written notice.  Hutton Decl. Ex. D at 54.  Rather, the more reasonable reading is that, particularly for claims for "Injury or Damage to Person or Property," the intent of the written notice requirement is to provide the other party an opportunity and enough detail to investigate the subject matter of the dispute.  Id. at 55.

In contrast, the language of the Mediation and Arbitration sections of the AIA Agreement is unequivocal.  The Mediation provisions explicitly state that "[a]ny Claim arising out of or related to the Contract . . . shall . . . be subject to mediation *as a condition precedent* to arbitration or the institution of legal or equitable proceedings by either party."  Id. at 56 (emphasis added).  The Arbitration provisions mandate that claims not resolved in mediation must be decided by arbitration.  Id.  The language of the AIA Agreement could not be more clear: mediation is a condition precedent to arbitration and arbitration is the sole forum for adjudicating disputes, unless the Parties agree otherwise.  Id.  One can scarcely imagine clearer language on this point.

    4.   <u>Plaintiff Fails to Create a Genuine Issue of Material Fact that it Satisfied the Conditions Precedent to Filing Suit</u>

"A contract is unenforceable if a condition

16

precedent is not met." <u>Willard v. Valley Forge Life</u>
<u>Ins. Co.</u>, 218 F. Supp. 2d 1197, 1201 (C.D. Cal. 2002)
(citing <u>Platt Pac.</u>, 6 Cal. 4th 307; <u>Metro Life Ins.,</u>
<u>Co. v. Devore</u>, 66 Cal. 2d 129 (1967)).

Defendant bears the initial burden of showing that liability is barred by a condition precedent. <u>Clarke</u>
<u>Logistics v. Burlington N. and Santa Fe Ry. Co.</u>, 347 F.
Supp. 2d 891, 894 (S.D. Cal. 2004) (citing <u>G.E.J. Corp.</u>
<u>v. Uranium Aire, Inc.</u>, 311 F.2d 749, 752 (9th Cir.
1962)). Defendant has presented evidence that
Plaintiff failed to participate in alternative dispute
resolution pursuant to the procedure specified in the
Mediation and Arbitration provisions of the AIA
Agreement prior to filing suit in Los Angeles Superior
Court. SUF # 9; SSUMF # 9; Hutton Decl. ¶ 9.

The burden shifts to Plaintiff to create a genuine
issue of material fact that it participated in
mediation prior to initiating this litigation. Fed. R.
Civ. P. 56. Plaintiff's evidence does not create a
genuine issue of material fact regarding these issues.

First, Plaintiff provides John Page's[8] affidavit
stating that Plaintiff "did not have a full
understanding of the extent" of the fines, restitution,
penalties, and attorneys' fees it was liable for until

---

[8] Mr. Page is Plaintiff's General Counsel (Page Decl. ¶ 1)
and represented Plaintiff at the October 23, 2013 hearing where
Plaintiff entered its guilty plea in the criminal action
(<u>see</u> Keleti Decl. ¶ 2, Ex. F at 13, 35).

the "preliminary hearing on the criminal matter was concluded in May 2013 and [Plaintiff] entered into plea negotiations with the District Attorneys' office in June 2013." Page Decl. ¶ 2.  Yet, whether Plaintiff knew the extent of its liability is irrelevant to whether it first submitted written notice of the claims to Defendant or demanded mediation of these claims prior to seeking arbitration or litigation.

Second, Plaintiff provides two emails from Defendant's "General Manager," Brian Hutton, to a California investigator, Victor Copelan, one dated July 30, 2009 and the other September 11, 2009.  Dorny Decl. ¶¶ 10, 11, Exs. J-K.  The July 30, 2009 email discusses various details regarding Defendant's role in the installation of the Robotic Palletizers, the equipment Defendant installed at the Manufacturing Facility, and the safety procedures regarding the clearance of an "Infeed Jam."  <u>Id.</u> Ex. J.  The September 11, 2009 email provides "Service Summary Release forms" associated with Plaintiff's system and explains Defendant's service on July 9 and 10, 2009.  <u>Id.</u> Ex. K.  Although these emails may show that Defendant was aware of the accident (and even of Plaintiff's potential liability), they do not show that Plaintiff demanded mediation prior to arbitration or litigation of its claims.

Likewise, Plaintiff's evidence that Defendant's employee, Brian Hastings, testified before the Workers'

Compensation Appeals Board on July 12, 2012 regarding the workers compensation action against Plaintiff does nothing more than show that Defendant knew about Plaintiff's potential liability.  <u>Id.</u> Ex. L.

In short, none of the evidence provided by Plaintiff creates a genuine issue of material fact that it complied with the conditions precedent to pursuing a claim under the AIA Agreement.  The AIA Agreement explicitly specifies mediation as a condition precedent to arbitration or "the institution of legal or equitable proceedings."  Hutton Decl. Ex. D at 56. Likewise, arbitration is designated as the sole forum for claims not resolved by mediation, save those for which the parties mutually agree otherwise.  <u>Id.</u> Defendant provides evidence that Plaintiff has not complied with these alternative dispute resolution provisions.  Hutton Decl. ¶ 9.  It is clear that for this Court to give full effect to these provisions then Plaintiff's failure to comply must bar litigation of Plaintiff's claims that are premised on the Parties' express contract.

The failure to mediate or arbitrate a contract that makes mediation or arbitration a condition precedent to filing a lawsuit has been held to warrant dismissal. <u>See</u> <u>Delamater v. Anytime Fitness, Inc.</u>, 722 F. Supp. 2d 1168, 1180-81 (E.D. Cal. 2010); <u>Brosnan v. Dry Cleaning Station Inc.</u>, No. C-08-02028 EDL, 2008 WL 2388392, at

1  *1 (N.D. Cal. June 6, 2008); <u>KKE Architects, Inc. v.</u>
2  <u>Diamond Ridge Dev. LLC</u>, No. CV 07-06866 MMM (FMOx),
3  2008 WL 637603, at *4-7 (C.D. Cal. Mar. 3, 2008).  This
4  has been the case even when a party is left without
5  recourse.  <u>See</u> <u>24 Hour Fitness, Inc. v. Superior Court</u>,
6  66 Cal. App. 4th 1199, 1215-16 (1998) (affirming
7  summary judgment against plaintiff was appropriate
8  where the parties had an arbitration agreement
9  governing plaintiff's employment claims and plaintiff
10 failed to initiate arbitration within the agreement's
11 one year deadline, even though plaintiff was left with
12 no recourse against these defendants); <u>see also</u> <u>Platt</u>
13 <u>Pac.</u>, 6 Cal. 4th at 321.

14      Accordingly, Defendant is entitled to summary
15 adjudication of Plaintiff's claims "arising out of or
16 relating to the Contract" because Plaintiff has failed
17 to satisfy a condition precedent to seeking arbitration
18 or legal or equitable remedies in litigation:
19 submission of the claims to mediation.  Plaintiff does
20 not present evidence creating a genuine issue of
21 material fact that it did, in fact, submit these claims
22 to mediation prior to arbitration or litigation and
23 therefore cannot show that a condition precedent to
24 litigation under the AIA Agreement was met.

25      Summary adjudication is proper for Plaintiff's
26 breach of contract and breach of express indemnity
27 claims because Plaintiff fails to create a genuine
28                              20

issue of material fact that it satisfied all conditions precedent to filing the instant Action.  As such, the Court **GRANTS** Defendant's Motion as to these two claims.

**B.  Is Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Superfluous?**

Plaintiff's second claim is one for breach of the covenant of good faith and fair dealing.  Id. at ¶¶ 15-20.  Defendant contends that this claim merely restates Plaintiff's breach of contract claim.  Mot. 14:13-15:16; Reply 6:27-28.  Plaintiff provides no argument on this point.

A claim for breach of the covenant of good faith and fair dealing may be disregarded as superfluous if it "relies upon essentially the same allegations" as a companion "breach of contract claim."  In re Facebook PPC Adver. Litig., 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010).  In short, where a party alleges the breach of an actual term, "a separate implied covenant claim, based on the same breach, is superfluous."  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 327 (2000).

Here, Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by "failing to take precautionary measures to prevent injury to [Plaintiff's] employees."  Compl. ¶ 17.  Plaintiff alleges in its breach of contract claim that Defendant breached the Agreements by, *inter alia*, "failing to erect and maintain safety precautions to prevent injury

to [Plaintiff's] employees." <u>Id.</u> at ¶ 11.  These two
alleged breaches are essentially the same; Plaintiff's
breach of the covenant of good faith and fair dealing
claim is premised entirely on the same breach as the
breach alleged in its breach of contract claim.
Therefore, Plaintiff's breach of the covenant of good
faith and fair dealing claim is superfluous to its
breach of contract claim.  Accordingly, the Court
**GRANTS** Defendant's Motion as to Plaintiff's breach of
the covenant of good faith and fair dealing claim.

**C.  <u>Is Plaintiff's Equitable Indemnity Claim Barred by</u>**
     **<u>the GSF and AIA Agreements' Indemnity Provisions?</u>**

Plaintiff's fourth and final claim is for implied
or equitable indemnity.  Compl. ¶¶ 25-26.  Defendant
argues that summary judgment should be granted on this
claim because Plaintiff may only look to the express
indemnity agreement and may not rely on equitable
indemnity.  Mot. 16:11-18:2; Reply 6:11-7:15.
Plaintiff argues that its claim is viable because
Defendant undertook an obligation separate and apart
from those arising out of the AIA Agreement.  Opp'n
10:18-12:3.

Ordinarily, "where parties have expressly
contracted with respect to the duty to indemnify, the
extent of that duty is generally determined from the
contract *and not by reliance on the independent*
*doctrine of equitable indemnity*."  <u>Maryland Cas. Co. v.</u>

1  <u>Bailey & Sons, Inc.</u>, 35 Cal. App. 4th 856, 864 (1995)

2  (emphasis added) (citing <u>Rossmoor Sanitation, Inc. v.</u>

3  <u>Pylon Inc.</u>, 13 Cal. 3d 622, 628 (1975), <u>Req'l Steel</u>

4  <u>Corp. v. Superior Court</u>, 25 Cal. App. 4th 525, 529

5  (1994)).  Quite simply, "principles of equitable or

6  comparative indemnity are inapplicable when parties

7  have an express indemnity agreement."  <u>Req'l Steel</u>

8  <u>Corp.</u>, 25 Cal. App. 4th at 526.

9      As the GSF and AIA Agreements make clear, Defendant

10  is liable for indemnity for any and all liabilities

11  arising out of or from Defendant's performance of the

12  Agreements.  Hutton Decl. Ex. C at 21 and D at 52.

13  Defendant is liable only to the extent that its

14  negligence is the cause of the liability.  <u>Id.</u>  Simply

15  put, Defendant is not liable for negligence that is

16  solely attributable to Plaintiff.  <u>Id.</u>

17      The indemnification provisions here are coextensive

18  with implied and equitable indemnification principles,

19  which "rest on the equities of the circumstances, i.e.,

20  tortfeasors sharing loss in proportion to their

21  culpability, contracting parties sharing loss relative

22  to their breach."  <u>Smoketree-Lake Murray v. Mills</u>

23  <u>Concrete Constr. Co.</u>, 234 Cal. App. 3d 1724, 1736-37

24  (1991).  As express indemnity clauses are entitled to

25  "a certain preemptive effect, displacing any implied

26  rights which might otherwise arise within the scope of

27  its operation," the Court finds that the Parties'

28                          23

express indemnity clauses operate to bar Plaintiff's equitable indemnity claim. <u>E.L. White, Inc. v. City of Huntington Beach</u>, 21 Cal. 3d 497, 507-08 (1978); <u>see also Wells Fargo Bank, N.A. v. Renz</u>, 795 F. Supp. 2d 898, 913 n.6 (N.D. Cal. 2011) (finding that "the fact that the parties' relationship in this case is governed by an express indemnity clause arguably forecloses Plaintiff's claim for equitable indemnity").

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claim for equitable indemnification because it is barred by the existence of express indemnification clauses governing the conduct in question.

**D.** **Plaintiff's Request to Deny Defendant's Motion as Premature or to Allow Plaintiff the Opportunity to Conduct Discovery Under Federal Rule of Civil Procedure 56(d)**

Plaintiff requests that this Court deny Defendant's Motion as premature or to allow Plaintiff an opportunity to conduct discovery. Opp'n 12:4-26. Defendant argues that the discovery Plaintiff proposes to conduct is not relevant to the issues needed for summary adjudication. Reply 8:13-15.

Federal Rule of Civil Procedure 56(d) permits a court to defer consideration of a motion, allow time to take discovery, or to issue any other appropriate order "[i]f a nonmovant shows by affidavit or declaration

1  that, for specified reasons, it cannot present facts

2  essential to justify its opposition." Fed. R. Civ. P.

3  56(d).

4       Plaintiff identifies several specific facts that it

5  believes are necessary for it to adequately oppose

6  Defendant's Motion.  Opp'n 14:18-15:18.  These facts,

7  however, relate entirely to Defendant's knowledge of

8  prior accidents involving the Columbia/Okura Series

9  A1600 Robotic Palletizers or of the design of these

10 Robotic Palletizers.  Id.  None of these facts are

11 relevant to whether Plaintiff sought mediation of the

12 indemnity claims prior to filing suit.  Moreover,

13 Plaintiff would clearly know whether it sought

14 mediation or arbitration prior to filing the instant

15 Action without discovery.  As such, the Court **DENIES**

16 Plaintiff's request to permit an opportunity to conduct

17 discovery under Rule 56(d).  See Cal. Union Ins. Co. v.

18 Am. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th

19 Cir. 1990) (citing Hall v. State of Haw., 791 F.2d 759,

20 761 (9th Cir. 1986) ("The district court does not abuse

21 its discretion by denying further discovery . . . if

22 the movant fails to show how the information sought

23 would preclude summary judgment").

24 **E.   Evidentiary Objections**

25      Plaintiff raises numerous evidentiary objections to

26 Defendant's evidence.  See Dkt. # 17-2.  As the Court

27 has not relied upon any of the objected-to evidence in

28                              25

reaching its conclusions, it need not rule on these evidentiary objections.  Accordingly, the Court deems as **MOOT** Plaintiff's evidentiary objections.

### IV.   CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** this Action because Plaintiff's breach of contract and breach of express indemnity claims are barred by Plaintiff's failure to satisfy a condition precedent to litigation, Plaintiff's breach of the covenant of good faith and fair dealing is superfluous to its breach of contract claim, and Plaintiff's implied/equitable indemnity claim is barred by the existence of an express indemnity clause.  The Court deems Plaintiff's evidentiary objections as **MOOT** and **DENIES** Plaintiff's requests under Federal Rule of Civil Procedure 56(d). The Clerk to close this Action.


**IT IS SO ORDERED.**

DATED: June 26, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge